IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN R. PORTER,                           CV 08-6033-MA

          Plaintiff,                       OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

          Defendant.

KATHRYN TASSINARI
BRENT WELLS
HARDER, WELLS, BARON & MANNING
474 Willamette, Ste 200
Eugene, OR 97401
(541) 686-1969

          Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1 - OPINION AND ORDER

STEPHANIE R. MARTZ
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2272

      Attorneys for Defendant

MARSH, Judge.

    Plaintiff Kevin R. Porter seeks judicial review of the Commissioner's final decision denying his February 2, 2005, applications for disability insurance benefits and supplement security income benefits (benefits) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and §§ 1381-1383(f).

    Plaintiff alleges he has been disabled since July 20, 2004, because of back, kidney, and mental health problems.  Plaintiff's disability claim was denied initially and on reconsideration. The Administrative Law Judge (ALJ) held a hearing on May 10, 2007, at which plaintiff and vocational expert (VE) Susan Foster testified.  On July 26, 2007, the ALJ issued a decision that plaintiff was not disabled.  On November 30, 2007, the Appeals Council denied plaintiff's request for further review.  The ALJ's decision, therefore, was the Commissioner's final decision for purposes of judicial review.

    Plaintiff seeks an Order from this court reversing the Commissioner's final decision and remanding the case for the payment of benefits.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

2  - OPINION AND ORDER

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability.

At Step Two, the ALJ found plaintiff suffers from an anxiety disorder and a compression fracture at T-12, which are severe impairments under 20 C.F.R. §404.1520(d)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or equal listed impairments.  20 C.F.R. §416.1520(d). The ALJ found plaintiff has the residual functional capacity to lift, push, and pull 20 lbs occasionally and 10 lbs frequently, stand, walk, and sit for six hours in an eight-hour workday, and stoop occasionally.  Plaintiff is moderately limited in his ability to interact with the general public, accept instructions, respond appropriately to supervisors'

3 - OPINION AND ORDER

criticisms, get along with co-workers, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.  He should have no general public contact and only brief, directed interactions with co-workers.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work as a display maker, woodworking lathe operator, building maintenance, groundskeeper, and teaching assistant.

At Step Five, the ALJ found plaintiff is able to perform other work involving unskilled light and/or sedentary jobs that exist in significant numbers in the national economy, including bench assembler, assembly machine tender, small products assembler, and stuffer.

Consistent with the above findings, the ALJ found plaintiff is not disabled and denied his claim for benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

4  - OPINION AND ORDER

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can

remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff contends the ALJ erred in failing (1) to give clear and convincing reasons for rejecting his testimony, (2) to give clear and convincing reasons for rejecting the opinion of treating physician John D. Ward, M.D., and (3) to consider evidence from treating therapists regarding the severity of his impairments.  Plaintiff contends each of these errors resulted in an inadequate hypothetical question being asked of the vocational expert regarding plaintiff's residual functional capacity.

## PLAINTIFF'S TESTIMONY/EVIDENCE

The following evidence is drawn from plaintiff's testimony, disability application, and work and earnings history reports.

Plaintiff was 36 years old on the date of the hearing before the ALJ.  He has a high school diploma.

Plaintiff spends two-three hours each day caring for his 56 year-old uncle who has Downs Syndrome.  His mother is paid by the State of Oregon to be his uncle's primary caregiver, but she provides plaintiff with a roof over his head and living expenses.

Plaintiff's past work included making wood prototypes of store display cases, acting as an instructor's aide in Oregon's Labor Training School, and building maintenance.

In April 2007, plaintiff completed probation arising from a sex offense.  He used to drink alcohol and use methamphetamine and Cocaine, but has not used any such substances in at least four years.

While plaintiff was on probation, he saw a professional counselor but ceased further visits after his probation ended because of the expense.  Since February 2007, plaintiff has been seeing Nurse Practitioners Linda Young, LPC, and Nathan Dingeldein, PMHNP, for mental health counseling.

Since 2003, plaintiff has been prescribed Methodone for pain arising from a compression fraction in his back.  He is also prescribed Lisinopril to treat hypertension and sometimes takes Prilosec and Tagamet for nausea.

Plaintiff has stress and panic problems when he is at a store or around people.  He is only able to move around for three or four hours before he has to lay down because of back pain.

As a condition of his probation, plaintiff was counseled for two years by mental health counselor, Peter Shannon, L.P.C. Plaintiff was not forthcoming with Shannon regarding his mental difficulties because of a paranoid belief that anything he said would be used against him "in a bad way."  Among plaintiff's

mental health issues are insomnia, oversensitivity to people, and panic attacks, which he now has about once a week. During his panic attacks, he feels safe only in his room and stops doing whatever it was he had being doing until he calms down. He did not discuss these issues with Shannon.

Plaintiff has not used methamphetamine for four years. He stopped after he broke his back. Plaintiff was taking Zoloft, but switched to Abilify and now feels less paranoid but more restless. He still has panic attacks and "maybe once a month" hears voices. He gets out of the house more often and is generally more active since he completed his term of probation. His mother takes him to his doctors' appointments and on other errands into town about half the time. He feels uncomfortable in stores when he shops for groceries for his uncle.

### RELEVANT MEDICAL TREATMENT EVIDENCE

Most of plaintiff's relevant medical treatment was undertaken by physicians Paula Nelson, M.D. and John Ward, M.D., who are affiliated with Samaritan Health Services/Physicians in Albany, Oregon.

The first record of treatment was on July 7, 2003, when plaintiff was treated in the Emergency Room for back pain across his back and into his kidneys resulting from a fall the week before. He appeared to be in severe distress. X-rays showed an acute compression fracture at L1, but a followup CT Scan showed

no impingement of the vertebral canal.

Plaintiff was given shots of Demerol and Phergan and was sent home with a prescriptions for a back brace and Percocet to alleviate his pain.  He was instructed to return to the Emergency Room if he experienced any numbness in his extremities or increasing pain.

1.    **Dr. Nelson - Family Practice**.

On July 14, 2003, plaintiff was seen by family practitioner, Paula Nelson, M.D., for a follow-up examination.  He continued to experience back pain that radiated from back to front, more in the morning, with some improvement during the day.  He reported no other chronic health problems, but recited a history of anxiety and depression.  Dr. Nelson prescribed Lortab and Bextra for pain relief and Klonopin for anxiety.

On July 28, 2003, plaintiff continued to have pain from back to front at level T-12.  On examination, he had verterbral tenderness in that area.  He was provided with a refill of Percocet for pain and Klonopin for anxiety.  He was also given samples of Celebrex, an anti-inflammatory medication.

On August 6, 2003, plaintiff continued to complain of similar back pain, anxiety, and hypertension.  He was provided more anti-inflammatory and narcotic pain medication.

On September 8, 2003, plaintiff stated he was not taking his anti-depressant and anxiety medication because he did not

have insurance to cover their cost.  Dr. Nelson referred him to

another doctor, Dr. Lewis, for further evaluation of his persistent back pain, "which seems to exceed his initial injury." She advised him to taper off the narcotic medication and regularly take his anti-inflammatory medication.

On October 2, 2003, Dr. Nelson noted plaintiff had passed a kidney stone, continued to have bilateral flank pain and, "in general, [was] not feeling well."  A later kidney stone scan was negative, and revealed plaintiff did not have any urinary flow obstruction.

On October 13, 2003, plaintiff continued to complain of significant back pain although the compression fracture seemed to be healing.  Dr. Nelson noted that Dr. Lewis had recommended "aggressive therapy."  Plaintiff continued to experience right flank pain related to the passing of the kidney stone.

In December 2003, the results of an Intravenous Pyelogram (IVP) examination relating to the functioning of plaintiff's kidneys and urinary tract was normal.

Later that month, plaintiff again sought treatment at the emergency room for persistent right flank pain.  He was offered non-narcotic pain medicine and became verbally abusive when his request for narcotics was rejected.  The treating physician noted

10 - OPINION AND ORDER

plaintiff ambulated well and was able to put on his shoes without any significant limitation in his range of motion.  He struck a window in anger on his way out of the emergency room.


2.  **Dr. Ward - Family Practice.**

In March 2004, family practitioner John Ward, M.D., assumed plaintiff's medical care.  Plaintiff stated he was unable to work because of his back.  His pain was relatively well-controlled with no pain, numbness, or weakness in his legs.  Plaintiff complained of anxiety and paranoia.  On examination, Dr. Ward noted plaintiff was in no acute distress.  He diagnosed an anxiety disorder, insomnia, hypertension, and lumbar back pain related to a closed fracture of the lumbar vertebra.

In April 2004, plaintiff requested that Dr. Ward take over his care as to prescribing pain medications.  He stated he had tried naturopathic treatments but was stable on Endocet, a brand name narcotic similar to Percocet (Oxycodone).

In May 2004, plaintiff's depression had eased and his mood and energy level were improved.  Dr. Ward noted plaintiff's liver enzymes were elevated, but plaintiff denied a history of heavy alcohol use.  He had cut down his use of Endocet, however, and was not doing as well.

In June 2004, plaintiff was trying to exercise more often. Dr. Ward noted he was "unable to do heavy lifting."

11 - OPINION AND ORDER

In July 2004, plaintiff reported that he had lost a quarter of a bottle of Percocet at a funeral two weeks earlier and was in a lot of pain.  He appeared to be anxious, but better.  Later that month, plaintiff reported one episode of right flank pain in the past 2-3 months.  He was sleeping well at night when he took two Klonopin to control his anxiety.

In August 2004, plaintiff again passed kidney stones and had severe discomfort and pain in the right flank.  An abdominal CT scan was normal.

In September 2004, plaintiff reported his pain medication was adequately controlling his pain and he was able to function fairly well in day-to-day activities.  Dr. Ward found plaintiff's anxiety level had improved and his back pain was unchanged.  Through December 2004, plaintiff's level of back pain remained under control.

In January 2005, plaintiff passed more kidney stones but the resulting pain resolved after 3-4 days.  He was using more pain medication and agreed that his mother should dispense it in the future.  Plaintiff inquired about disability.

In February 2005, Dr. Ward wrote a letter that plaintiff had been unable to do construction work since he fractured his back. Plaintiff was encouraged to increase his activity level.

In March 2005, plaintiff was increasingly stressed because

he was unable to work.  His pain was adequately controlled.

From April-July 2005, plaintiff variously reported that his back pain was better-controlled with Methadone (which he was taking in place of Endocet), and that he was less depressed and anxious.  He was taking larger doses of Methadone.

In August 2005, plaintiff reported his pain control was better in the morning than in the evening and thought that a small increase in his Methadone dose would be helpful.

From September through December 2005, plaintiff's pain medication was working fairly well and he was working to control his anxiety.  Nevertheless, he stated he continued to have some pain and Dr. Ward increased his Methadone dose.

From January through March 2006, plaintiff's pain control remained adequate but he continued to have stressors that caused an increase in his anxiety level.  Dr. Ward advised him to be more active.  Dr. Ward again wrote a letter opining that plaintiff could not do construction work because of his back injury.

From April through June 2006, plaintiff's pain was well controlled and he was more motivated and "busy getting things done."

In July 2006, plaintiff had a week where he was depressed and considered "ending it all."  His pain, however, was "fairly well-controlled."  He was stressed, however, by having to deal

13 - OPINION AND ORDER

with his uncle.  He was working at staying active.

From August 2006 through October 2006, plaintiff was initially more anxious but, thereafter, got "much better" mentally and physically.

## MEDICAL CONSULTATION EVIDENCE

### 1.    Sharon Eder, M.D.-  Internal Medicine.

Dr. Eder reviewed plaintiff's medical records and opined that plaintiff's statement that he unable to sit for significant periods or walk far was only partially credible in light of the medical records.  She opined plaintiff has the residual functional capacity to perform light work, which includes lifting 20 lbs occasionally and 10 lbs frequently, standing, walking, and sitting six hours in an eight-hour workday, and no limits pushing and pulling.  He is able to balance, crouch, climb, kneel, and crawl frequently, and stoop occasionally.

### 2.    MaryAnn Westfall, M.D.

Dr. Westfall concurred in this opinion.

## RELEVANT MENTAL HEALTH TREATMENT RECORDS

### 1.    Peter Shannon, M.S., NCC, LPC - Mental Health Counselor.

Shannon began working with plaintiff in May 2005, following a referral by plaintiff's probation officer, with the goals of integrating plaintiff into the community and making him more self-reliant, confident, independent, and ultimately, self-

14 - OPINION AND ORDER

sufficient.

Shannon noted that, although he had previously been diagnosed with alcohol and methamphetamine abuse, plaintiff had a significant period of alcohol and drug sobriety.  He was managing his life despite those past experiences.  Plaintiff, however, had difficulty moving about the community and his behavior appeared to "mimic some of the symptomatology" of "agoraphobia" (a morbid fear of open spaces).  Shannon opined plaintiff could "probably pursue some form of employment . . . in a somewhat simplified atmosphere where the set and setting is reasonably calm and quiet, without a lot of interpersonal and dynamic interaction."

**2.    Linda Young, LPC, Mental Health Specialist**.

Young was plaintiff's therapist for two months from February to April 2007, when she wrote a letter to plaintiff's attorney, opining that plaintiff could not work part-time even in a low stress job because of "extreme anxiety and a bipolar disorder that predates any substance abuse."  She stated that plaintiff had a "pervasive and unstable mental illness" and that his "lack of judgment and poor impulse control will cause him sustainability problems in a work environment on an ongoing basis."

**RELEVANT MENTAL HEALTH EVALUATION RECORDS**

**1.    Pennie Farrell, LCSW - Crime Victims Prevention Program**.

From December 2001 through May 2002, Social Worker Farrell

15 - OPINION AND ORDER

evaluated plaintiff in connection with his conviction arising from sexual offenses involving public indecency.  She described him as a "seriously disturbed young man" who had not had psychological testing but presented himself with "traits of schizophrenia."

2.  **Nathan Dingeldein, PMHNP - Nurse Practitioner**.

In April 2007, Nathan Dingeldein, a Psychiatric Mental Health Nurse performed a psychiatric assessment of plaintiff. He noted plaintiff was "highly anxious" during the session.  He saw "an untreated mixed bipolar process coupled with some mild psychosis."  Dingeldein suspected plaintiff's prior methamphetamine abuse "exacerbated both mood and anxiety issues." He recommended plaintiff stop using Zoloft, switch to Abilify, and increase the dosage of Klonopin to treat his anxiety.

3.  **Gale Smolen, M.D. - Psychiatrist**.

Dr. Smolen performed a psychodiagnostic evaluation of plaintiff in April 2005, in connection with plaintiff's claim for benefits.  In connection with his evaluation, Dr. Smolen reviewed plaintiff's family, educational, and work background  records, and his medical records.  Dr. Smolen diagnosed social phobia, methamphetamine abuse, Cocaine dependence in remission, and assigned a GAF score of 50 (serious impairment in social, occupational, and school functioning).

16 - OPINION AND ORDER

## <u>MENTAL HEALTH CONSULTATION EVIDENCE</u>

1.   **<u>Paul Rethinger, Ph.D. - Psychologist</u>**.

Dr. Rethinger reviewed plaintiff's mental health treatment and evaluation records and concluded plaintiff suffers from social phobia, and alcohol and methamphetamine abuse in remission.  Dr. Rethinger opined that plaintiff has mild restrictions in activities of daily living and maintaining concentration, persistence, or pace, and moderate difficulties in maintaining social functioning.  Based on these limitations, Dr. Rethinger concluded plaintiff is capable of working without public contact, and with brief, directed interactions with coworkers.

2.   **<u>Dorothy Anderson, Ph.D. - Psychologist</u>.**

Dr. Anderson agreed with Dr. Rethinger that plaintiff is moderately limited in his ability to interact with the public, to get along with his co-workers, and to engage in socially acceptable behavior, and further opined he had moderate limitations in his ability to accept instructions and respond appropriately to supervisors' criticisms.

## <u>VOCATIONAL EXPERT TESTIMONY</u>

The ALJ asked VE Susan Foster what jobs existed in the national and regional economy for an employee with a high school education who was limited to light work, which includes lifting 20 lbs occasionally and 10 lbs frequently, standing, walking, and

17 - OPINION AND ORDER

sitting six hours in an eight-hour workday, unlimited pushing and pulling, and the ability to balance, crouch, climb, kneel, and crawl frequently, and stoop occasionally.  He also has moderate limitations in interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness.  The VE opined such an employee could not perform plaintiff's past relevant work but could work as a bench assembler, assembly machine tender, and stuffer, which are jobs that exist in substantial numbers in the national economy.

The ALJ then added another limitation under which plaintiff should work only in a "somewhat simplified atmosphere" that is "reasonably calm and quiet without a lot of interpersonal or dynamic interaction."  The VE opined the assembly machine tender would be the only job excluded by that limitation.

## ANALYSIS

The issues are whether the ALJ gave clear and convincing reasons for questioning plaintiff's credibility and rejecting the disability opinion of treating physician, Dr. Ward, and for not adequately considering evidence from mental health therapists. Plaintiff contends each of these errors resulted in an inadequate hypothetical question being asked of the vocational expert regarding plaintiff's residual functional capacity.

18 - OPINION AND ORDER

1.  **Plaintiff's Credibility**.

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting his testimony regarding his physical and mental impairments.  I disagree.

A claimant who alleges disability based on subjective

symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements

19 - OPINION AND ORDER

concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, there is no evidence that plaintiff is malingering and Plaintiff produced objective evidence that he suffers from back pain and anxiety.  The ALJ, however, rejected plaintiff's description of the severity of these impairments and their limiting effects on his ability to perform light work.  The ALJ accurately noted the medical record as a whole reflected plaintiff's pain and anxiety were well-controlled by medication and that plaintiff's anxiety increased when he did not follow Dr. Ward's medication regimen.  The ALJ also noted plaintiff's drug-seeking behavior as a reason for not fully crediting his statements regarding the severity of his pain.  Particularly noteworthy was the instance in December 2003 when plaintiff became physically and verbally abusive after he was denied narcotic medication.  The ALJ also noted generally that the "overall evidence of record indicates that [plaintiff's] functionability is greater than his exaggerated self-reports at the hearing and to his more recent treating sources."  I agree with the ALJ that there is a disconnect between plaintiff's

claimed physical limitations, the daily activities he describes
in earlier disability forms, and the urging of his doctors that
he become more active.

Accordingly, on this record, I conclude the ALJ gave clear
and convincing reasons for not fully crediting plaintiff's
testimony regarding his physical and mental limitations.

**2.    Rejection of Treating Physician's Opinion.**

Plaintiff points out that Dr. Ward opined on several
occasions that plaintiff could not perform his past construction
work because chronic pain had significantly limited his function.

The opinions of treating doctors should be given more weight
than the opinions of doctors who do not treat the claimant.
Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

> Where the treating doctor's opinion is not
> contradicted by another doctor, it may be
> rejected only for clear and convincing
> reasons supported by substantial evidence in
> the record.  Even if the treating doctor's
> opinion is contradicted by another doctor,
> the ALJ may not reject this opinion without
> providing specific and legitimate reasons
> supported by substantial evidence in the
> record.  This can be done by setting out a
> detailed and thorough summary of the facts
> and conflicting clinical evidence, stating
> his interpretation thereof, and making
> findings.  The ALJ must do more than offer
> his conclusions.  He must set forth his own
> interpretations and explain why they, rather
> than the doctors', are correct.

Id. (Internal Citations Omitted).  In turn, "the opinions of
examining physicians are afforded more weight than those of non-

21 - OPINION AND ORDER

examining physicians."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

The record does not indicate the ALJ improperly rejected Dr. Ward's opinion.  To the contrary, the ALJ supported it by finding that plaintiff could not perform his past relevant work, which included the construction work described by Dr. Ward.  He could, however, perform light work, which Dr. Ward did not consider in his disability opinion.  The record, when considered as a whole, supports the ALJ's finding.

Accordingly, I conclude the ALJ did not err in assessing Dr. Ward's disability opinion.

**3.**   **Rejection of Opinions by Plaintiff's Treating Therapists.**

Plaintiff contends the ALJ failed to consider adequately the opinions of Mental Health Counselors Peter Shannon and Linda Young regarding plaintiff's ability to sustain employment.

The ALJ must provide germane reasons for rejecting this evidence.  Lewis v. Apfel, 236 F.3d 503, 511, (9th Cir. 2001).

a.   Peter Shannon.

Shannon opined plaintiff could "probably pursue some form of employment . . . in a somewhat simplified atmosphere where the set and setting is reasonably calm and quiet, without a lot of interpersonal and dynamic interaction."

The ALJ noted Shannon opined that plaintiff "could perform some form of employment" but questioned whether he should work

22 - OPINION AND ORDER

part-time rather than full-time at the beginning.  Shannon also
set limits on the work environment, including working in a calm,
quiet environment that was not overloaded with complicated tasks.
The ALJ, however, incorporated the latter limitation into a
hypothetical to the VE, who responded that plaintiff could still
do two of the jobs despite such a limitation.  The ALJ also
discounted Shannon's "part-time" limitation, noting, <u>inter</u> <u>alia</u>,
"the overall record indicates [plaintiff's] residual functional
capacity was greater than his self-reports to his various
treating sources."  I agree.  Other than Shannon's suggestion
that plaintiff start back to work part-time, the medical record
is devoid of any suggestion that plaintiff is only able to work
part-time.

On this record, I conclude the ALJ gave germane reasons for
rejecting in part Shannon's opinion regarding plaintiff's present
ability to engage in full-time work.

b.  <u>Linda Young</u>.

Young opined plaintiff has a "pervasive and unstable mental
illness" and that his "lack of judgment and poor impulse control
will cause him sustainability problems in a work environment on
an ongoing basis."

The ALJ noted Young treated plaintiff for less than two
months and pointed out that her opinion, unlike those of licensed
medical providers such as Dr. Smolen, was based on an incomplete

psychiatric assessment that contained plaintiff's "exaggerated and inconsistent self-reports," including a misleading statement by plaintiff that he had "spent much of the last two years in bed and nauseous because of the Methadone."

On this record, I conclude the ALJ gave germane reasons for rejecting Young's disability opinion.

4.   **Ability to Perform Other Work**.

Plaintiff contends that he would have to be found disabled if the limitations found by therapists Shannon and Young were included in the hypothetical to the VE.  Distasio v. Shalala, 47 F.3d 348, 349-50 (9th Cir. 1995).  This argument is moot in light of my conclusion that the ALJ did not err in excluding certain limitations found by Young, and in fact, did include limitations found by Shannon in the hypothetical to the VE.

<u>CONCLUSION</u>

For all the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED** and this matter is **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED this 10   day of February, 2009.


                                   /s/  Malcolm F. Marsh
                                   MALCOLM F. MARSH
                                   United States District Judge


24 - OPINION AND ORDER

25 - OPINION AND ORDER